UNITED STATES BANKRUPTCY COURT
FOR THE

WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| IN RE:<br><br>DAVID E. BRODY<br>Debtor<br><br>Plaintiff,<br><br>vs.<br><br>UPSTART NETWORK, INC.<br><br>Defendant | Chapter 13<br><br>Case No. 22-31713<br><br><br><br><br><br>Adv. Case No._____ |

## CLASS ACTION COMPLAINT

Plaintiff David E. Brody ("Plaintiff" or "Brody") bring this action both individually and on behalf of a class of persons defined below against Upstart Network, Inc., (Defendant" or "Upstart").

### I. INTRODUCTION

1. This action is brought by Plaintiff to remedy Defendant's consistent pattern and practice of disregard for the provisions of the United States Bankruptcy Code granting debtors an automatic stay upon the filing of a bankruptcy petition.

2. Defendant specifically and purposely disregard the Bankruptcy Code and illegally collect or attempt to collect amounts from debtors while the automatic stay is in place. Defendants also routinely send dunning communications to debtors while the automatic stay is in place.

## II. **PARTIES**

3. Brody is domiciled in the Commonwealth of Kentucky and is a resident of Jefferson County, Kentucky. Plaintiff is a member of the proposed Class and are victims of the wrongdoing alleged in this Complaint.

4. Defendant Upstart Network, Inc., is a Delaware corporation with its principal place of business in San Mateo, California. Upstart is registered to and does in fact transact business in the Commonwealth of Kentucky. Upstart's agent for service of process is Corporation Service Company, 421 West Main St, Frankfort, KY 40601.

## III. **JURISDICTION AND VENUE**

5. This Court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §1334, 151 and 157 and 11 U.S.C. §105 and §362(a). As to all causes of action, this is a core proceeding pursuant to 28 U.S.C. §157(b).

6. The Court has personal jurisdiction over the Defendant.

7. Venue is proper in this district pursuant to 28 U.S.C. §1409.

8. Plaintiff consent to entry of final judgment and other orders in this proceeding by the Bankruptcy Court.

## IV. **FACTS**

9. This is a class action seeking compensatory and punitive damages against Defendant as a result of its violations of the automatic stay, 11 U.S.C. § 362(a)(6), for collection practices directed at debtors in Bankruptcy proceedings, and seeking an injunction to prohibit Defendant from continuing its conduct in violation of the automatic stay. Specifically, this class action arises from Defendant's practices of sending collection communications to debtors, credit reporting incorrectly, and collecting payments on debts in violation of the automatic stay.

A.     **The Upstart business model**

10.     Upstart is a publically traded financial services company that originates credit, including personal and auto loans, by providing bank partners with a proprietary, cloud-based, lending platform that it markets as "artificial intelligence." Loans originated by Upstart are either held, sold to institutional investors, or retained by bank partners.

11.     In 2021, Upstart's bank partners originated 1.3 million loans, totaling $11.8 billion.

12.     In addition to originating loans, Upstart also offers its partners "a comprehensive servicing solution that is lender-branded including U.S. based customer support, a payment platform, and collections services."

13.     Upstart's fees earned largely from servicing loans has increased from $15.8 million in 2019 to $75 million in 2021. From 2020 to 2021, Upstart's revenue from servicing fees increased 165%.

14.     Upstart charges servicing fees "monthly to any entities holding loans facilitated through [its] platform, to compensate [Upstart] for activities [ ] perform[ed] throughout the loan term, including collection, processing and reconciliations of payments received, investor reporting and borrower customer support."

15.     Upstart "acts as loan-servicer for substantially all outstanding loans facilitated through the Upstart platform."

16.     Upstart utilizes its "homegrown platform" to service loans. When borrowers miss payments, Upstart "focus[es] on early intervention and attempt to reach them via emails, calls, texts and skip-trace to help bring their account current or offer hardship options in accordance with our servicing policies."

3

17. Accounts that are more than 30 days past due are referred to third-party collection agencies for collection.

18. Upstart states in its public filings that it has policies in place to ensure compliance with the requirements of the Bankruptcy Code, including the automatic stay.

19. Upstart has an Audit Committee of the Board charged with oversight of "the Company's compliance with applicable law (including U.S. federal securities laws and other legal and regulatory requirements)." Upstart states that the Audit Committee is required to review its compliance with laws "on at least an annual basis."

20. However, Upstart has consistently engaged in a pattern and practice of abusing debtors who have filed for protection under the Bankruptcy Code by continuing to demand payment and even taking post-petition payments after the automatic stay goes into effect.

21. By continuing efforts to collect the debt after the filing of a petition in bankruptcy, Upstart denies debtors the breathing room guaranteed by the Bankruptcy Code and secures payments for itself ahead of other creditors.

22. Upstart's pattern and practice of continuing to attempt to collect debts after the automatic stay is in place allows Upstart to coerce and coax debtors to pay limited funds to Upstart in violation of the automatic stay by repeatedly emailing or calling debtors seeking payments or even automatically deducting payments from debtors' accounts.

23. Plaintiff and Class Members are damaged in that:

    a. They pay amounts to Upstart that they do not owe;

      b.      They endure repeated calls, communications, and credit reporting from Upstart attempting to obtain payments in violation of the automatic stay and denying them the breathing room to reorganize their finances;

      c.      They are forced to engage counsel;

      d.      They are exposed to repeated violations of the automatic stay, one of the foundational protections they sought by filing bankruptcy in the first place.

24.      Upstart's policies and practices are not the result of neglect or indifference but are deliberately unfair, oppressive, malicious, and unconscionable.

25.      Upstart's motives are purely economic. Through the policies, pattern, and practices alleged in this action, Upstart has obtained substantial payments it is not entitled to receive for both itself and the creditors it represents.

26.      Upstart also earns additional fee revenue from its creditor customers for these collection efforts. As a result, Upstart will continue to engage in these violations without the relief sought in this action.

**B.    Upstart's Post-Petition Communications with Brody**

27.      Brody filed a Chapter 13 Petition on August 31st, 2022. The matter was assigned case number 22-31713 in the United States Bankruptcy Court for the Western District of Kentucky.

28.      Brody's debt to Upstart was properly scheduled.

29.      Upstart received notice of the filing of Plaintiff's petition electronically on 9/1/22.

30.      On September 19, 2022, Upstart took post-petition payments totaling $129.49 from Brody's bank account.

31. Upstart communicated with Plaintiff in an attempt to collect upon its prepetition obligation, including on or about October 14, 2022.

32. That Upstart regularly updated Brody's credit report with notices of payments which were missed but not owed due to the filing of his bankruptcy petition in an attempt to coerce Plaintiff into paying his prepetition obligation to Upstart.

## V. CLASS CERTIFICATION

33. Pursuant to Bankruptcy Rule 7023 and Rules 23(a), (b)(3), and (b)(2) of the Federal Rules of Civil Procedure, Plaintiff bring this class action on behalf of himself and all others similarly situated. Specifically, Plaintiff seek to represent the following persons ("the Class" or "Class Members"):

> All persons with loans administered or serviced by Upstart Network, Inc., and who have filed a Chapter 7 or Chapter 13 bankruptcy petition in the Eastern or Western Districts of Kentucky but received communications from or were otherwise subject to attempts by Upstart Network, Inc., to collect prepetition obligations or who had payments automatically deducted from their account after the automatic stay became effective.

The Class definition is subject to amendment as needed.

34. The class period commences 5 years prior to 1/18/23 said date being five years preceding the filing of Stephens v. Upstart, EDKY Bankruptcy Case. No.: 23-3001 until the date of entry of final judgment.

35. Excluded from the Class is Defendant, its employees, agents and assigns, and any members of the judiciary to whom this case is assigned, their Court staff, and Plaintiff' counsel.

36. Members of the above-defined Class can be easily identified through Defendants' records.

**B.      Numerosity**

37.    The proposed Class is so numerous that individual joinder of all Members is impracticable.

38.    There are hundreds if not thousands of members of the Class. While the identities of Class Members are unknown at this time, such information can be readily ascertained through appropriate investigation and discovery. The disposition of the claims of the Class Members in a single action will provide substantial benefit to all parties and to the Court.

**C.      Predominance of Common Questions of Law and Fact**

39.    Common questions of law and fact exist as to all Members of the Class and predominate over any questions affecting only individual Class Members. These common legal and factual questions include, but are not limited to, the following:

  a.    Whether Defendant has violated 11 U.S.C. §362;

  b.    Whether Class Members suffered actual damages and punitive damages as a result of Defendant's conduct as alleged herein and, if so, the proper measure of damages;

  c.    Whether Defendant should be required to disgorge post-petition payments it received in violation of the automatic stay;

  d.    Whether Plaintiff and Class Members should be awarded their attorney fees in bringing this action; and,

  e.    Whether Class Members are entitled to injunctive relief prohibiting Defendant from continuing to engage in the conduct alleged in this Complaint and enjoining such practices in the future.

40. Pursuant to Rule 23(b)(2), Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief appropriate with respect to the Class as a whole.

### D. Typicality

41. Plaintiff's claims are typical of the claims of the Members of the Class. Plaintiff shares the facts and legal claims or questions with Class Members as alleged in this Complaint and Plaintiff and all Class Members have been similarly affected by Defendant's common course of conduct.

### E. Adequacy

42. Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in handling complex class action litigation, including complex questions that arise in this type of consumer protection litigation. Further, Plaintiff and their counsel are committed to the vigorous prosecution of this action.

### F. Superiority

43. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy for at least the following reasons:

   a. The claims presented in this case predominate over any questions of law or fact affecting individual Class Members;

   b. Individual joinder of all Class Members is impracticable;

   c. Absent a Class, Plaintiff and Class Members will continue to suffer harm as a result of Defendant's unlawful conduct;

   d. Given the amount of individual Class Members' claims, few, if any, Class Members could afford to, or would, seek legal redress for the wrongs Defendant

committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

   e. Even if individual Class Members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

   f. Adjudications of individual Class Members' claims against Defendant would, as a practical matter, be dispositive of the interests of other Class Members who are not parties to the adjudication and may substantially impair or impede the ability of other Class Members to protect their interests;

   g. This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and Class Members can seek redress for the harm caused by Defendant; and

   h. Defendant implemented uniform policies and procedures relating to the collection of debts from Plaintiff and Class Members that resulted in uniform damage to Plaintiff and Class Members.  As a result, Defendant has acted or refused to act on grounds generally applicable to each Class Member, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

  44. Defendant's failure to implement effective policies and procedures to prevent attempts to collect on debts subject to the automatic stay arises out of a common omission or failure to act, which has a uniform effect on Plaintiff and all Class Members.  Plaintiff seek preliminary and permanent injunctive relief and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to require Defendant to discontinue its unlawful conduct.

45. Because Plaintiff seeks injunctive relief for the entire Class, the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. Further, bringing individual claims would overburden the courts and would be an inefficient method of resolving the dispute at the center of this litigation.

## VI. CLAIMS

### A. COUNT 1 – Willful Violation of the Automatic Stay: Post-Petition Payments

46. Plaintiff re-allege and incorporate by reference each of the preceding paragraphs as if fully set forth herein.

47. This is an action for damages against Defendant pursuant to 11 USC § 362(k) for violation of the automatic stay.

48. At all times alleged in this Complaint, Defendant was informed of the existence of Plaintiff' bankruptcy case and aware that the automatic stay provided by 11 U.S.C. § 362(a)(6) prohibited it from taking efforts to "collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title."

49. Notwithstanding its knowledge of the existence of the bankruptcy case and the stay imposed by the Bankruptcy Code, Defendant has violated the automatic stay by continuing to deduct automatic payments.

50. Defendant collected $129.49 in post-petition payments from Plaintiff.

51. Defendant has contacted Plaintiff with the intent of inducing him to pay pre-petition obligations in violation of the automatic stay.

52. Defendant has repeatedly and wrongfully updated Plaintiff's credit report with information without good cause with the intent of inducing him to repay to pre-petition obligations.

53. As a direct and proximate result of Defendant's violations of the automatic stay, Plaintiff have suffered damages and incurred attorneys' fees and costs.

B.  **COUNT 2 – Injunctive Relief**

54. Plaintiff re-allege and incorporate by reference each of the preceding paragraphs as if fully set forth herein.

55. This Court is authorized by 11 U.S.C. §105(a) to exercise its equitable powers where necessary or appropriate to facilitate implementation of the Bankruptcy Code, including the imposition of temporary and permanent injunctions.

56. As a direct and proximate result of Defendant's violations and willful violations of the Bankruptcy Code, Plaintiff and Class Members have been damaged in an amount to be proven at trial.

57. Unless enjoined, Defendant will, in all likelihood, continue to violate federal law by implementing the policies and procedures alleged in this Complaint. As a result, Plaintiff and Class Members seek a permanent injunction to enjoin further violations of the law by Defendant.

## VII.  **DEMAND FOR RELIEF**

Plaintiff therefore request on behalf of themselves and the proposed Class, the following relief:

1. Certification of the Class alleged in this Complaint;
2. The award of actual damages;

11

3. The disgorgement of all post-petition payments collected by Defendant in violation of the automatic stay;

4. The reimbursement for any bank charges incurred as a result of Defendant's unauthorized post-petition withdrawals from Plaintiff' checking account;

5. The award of punitive damages;

6. Injunctive relief prohibiting Defendant from continuing its pattern and practice of violating the automatic stay as alleged herein Bankruptcy Rule 7023, 11 U.S.C. § 105 and other applicable law;

7. The recovery of all attorneys' fees, costs and expenses of conducting this action; and,

8. All such further relief that this Court deems just and proper.

DATED this 24th day of September, 2025.

        By: /s/ Matthew T. Sanning
           Matthew T. Sanning
           224 Main Street
           Augusta, Kentucky  41002
           (606) 756-2066
           mattsanning1@gmail.com Email

and

           Robert R. Sparks
           *rrsparks@strausstroy.com*
           STRAUSS TROY CO., LPA
           150 East Fourth Street
           Cincinnati, OH 45202
           Tel:  (513) 621-2120

and

13

           John M. Simms (Ky. Bar #86049)
           1608 Harrodsburg Road
           Lexington, KY 40504
           (859) 225-1745 Telephone
           (859) 254-2012 Facsmile
           jms@ask-law.com

Attorneys for Plaintiff

16127674.1